**Lynnwood Anthony VRBA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–03–00070–CR.**

Court of Appeals of Texas, Waco.

Oct. 27, 2004.

Rehearing Overruled Jan. 4, 2005.

Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Lynwood Anthony Vrba of felony driving while intoxicated. Vrba pleaded "true" to enhancement allegations increasing his punishment to that

for an habitual offender, and the jury assessed his punishment at sixty years' imprisonment. Vrba contends in three issues that the court abused its discretion by: (1) admitting into evidence his stipulation to two prior DWI convictions; (2) permitting the State to mention this stipulation in closing argument; and (3) permitting the State to ask improper commitment questions during voir dire. Because the stipulation was admissible and because the voir dire questions were not improper, we will affirm.

■ Vrba contends in his first issue that the court abused its discretion by admitting in evidence his stipulation that he had been previously convicted twice of DWI. He contends in his second issue that the court abused its discretion by permitting the State to mention this stipulation in closing argument.

The Court of Criminal Appeals has held that such a stipulation may be admitted in evidence. *Hollen v. State*, 117 S.W.3d 798, 802 (Tex.Crim.App.2003). It is appropriate for a prosecutor to provide a "summation of the evidence" in closing argument. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000). Thus, the reference to the stipulation in closing argument was not objectionable.

Accordingly, we overrule Vrba's first and second issues.

Vrba contends in his third issue that the court abused its discretion by permitting the State to ask improper commitment questions during voir dire. Vrba specifically complains of the following questions:

"What are some signs that somebody is intoxicated?"

"Who thinks that the process of being arrested would be something that might sober you up a little bit?"

"Why do you think someone should be punished?"

"[W]hich one of these [four theories[1] of punishment] is most important to you in trying to determine how someone should be punished and how much punishment they should receive?"

■ A voir dire question is a "commitment question" "if it attempts to commit the juror to a particular verdict based on particular facts." *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App.2002) (citing *Standefer v. State*, 59 S.W.3d 177, 181 (Tex.Crim.App.2001)). A commitment question is improper if it does not "include only those facts that lead to a valid challenge for cause." *Lydia v. State*, 109 S.W.3d 495, 497–98 (Tex.Crim.App.2003) (citing *Standefer*, 59 S.W.3d at 182).

■ Notwithstanding these principles however, litigants are given "broader latitude" to "inquire into a prospective juror's personal background for the purpose of determining whether that background will adversely affect the juror's ability to decide the case in an impartial manner" and to inquire "into a prospective juror's general philosophical outlook on the justice system." *Sells v. State*, 121 S.W.3d 748, 756 n. 22 (Tex.Crim.App.2003).

■ Vrba first challenges the question, "What are some signs that somebody is intoxicated?" The prosecutor did not ask, "What signs of intoxication in your opinion warrant a conviction for driving while intoxicated?" The latter would be a commitment question. *See Standefer*, 59 S.W.3d at 180 ("What circumstances in your opinion warrant the imposition of the death penalty?" is a commitment question.). The question at issue is not a commitment question because it seeks only the jurors'

---

**1.** The four theories of punishment referred to by the prosecutor were general deterrence, specific deterrence, rehabilitation, and retribution.

general views on signs of intoxication. *Cf. id.* at 180 n. 7 ("Do you think there might be circumstances that would mitigate against the death penalty?" is not a commitment question.).

■ Vrba next challenges the question, "Who thinks that the process of being arrested would be something that might sober you up a little bit?" This question is closer to the question at issue in *Standefer*, "Would you presume someone guilty if he or she refused a breath test on their refusal alone?" The question is closer to the question in *Standefer* because it focuses on a particular piece of evidence. However, the question did not ask the jurors to resolve (or "refrain from resolving") the issue of intoxication on the basis of this evidence. Nor did it ask the jurors "to set the hypothetical parameters for [their] decision-making" on the issue of intoxication. *See id.* at 179–80. Thus, the second question at issue is not a commitment question.

■ Finally, Vrba challenges the questions, "Why do you think someone should be punished?", and "[W]hich one of these [four theories of punishment] is most important to you in trying to determine how someone should be punished and how much punishment they should receive?" These questions inquired into the jurors' "general philosophical outlook on the justice system." *See Sells*, 121 S.W.3d at 756 n. 22. The parties are given "broader latitude" to ask questions of this sort. *Id.* Thus, we conclude that the court did not abuse its discretion by overruling Vrba's objections to these questions.

Accordingly, we overrule Vrba's third issue.

We affirm the judgment.